53

1     that.

2     And that is all I have to say.

3     THE COURT: Would your client like to have anything

4     to say?

5     MR. BALDWIN: I believe he would, Judge.

6     THE COURT: All right.

7     DEFENDANT BODDIE: Yes, I want to -- I would just

8     like to apologize for putting everybody through this. You,

9     Miss Conour, Mr. Dowd, everyone else in this. I'm truly

10    sorry. I don't feel like I deserve life, but I do believe

11    that I have to pay for my crime since I was found guilty.

12    Just truly sorry about all of this, do feel very remorseful.

13    THE COURT: Thank you, Mr. Boddie. You might as

14    well stay right here.

15    This sentencing today, Mr. Boddie, is primarily about

16    choices. It is not just your choice, it is about the choice

17    that Congress makes as to how to respond to the serious drug

18    problem that we have in this country. Congress is trying to

19    respond to all of the cocaine that is available. They have

20    hearings about what cocaine does in the community and how it

21    ruins people's lives and takes productive citizens and makes

22    criminals out of them and ruins families. And in your

23    history with this you see how people are killed as a result.

24    Folks come in from out of town, your brother is killed.

25    DEFENDANT BODDIE: Yes, sir.

54

THE COURT: And aunts are gone, uncles are gone, kids are gone. It is just a horrible thing that this cocaine does, and in response to that Congress authorizes these life sentences.

And the Guidelines provide life sentences, and they are concerned that the courts make findings, factual findings, and base those findings on the record in order to arrive at some consistency in the way that we handle -- the way the courts handle this serious cocaine problem that we have in this country. And those are choices that Congress has made, choices that the security branch has made when faced with this dilemma.

And you made some choices in this case. It got you where you are today. Now, I see a choice made early in your life that the money that this stuff could provide you, the power that it gives you in your community, help you focus on this kind of a career, and it was a career according to the evidence, and you made that choice.

Early on in your career with this you established yourself as somebody who can provide, or can help provide cocaine for the community and make yourself some money. And then it gets bigger than that, and it got a lot bigger than that. It got very big. And you were very efficient and very careful and very skillful. Your role in this is pretty distant from the street dealer, pretty distant from the

55

1   person who buys it, very distant from the person who would do
2   about anything they could to get the money to purchase this
3   stuff.  And so it is hard to detect who is in charge of this
4   conspiracy and how do you stop it.
5        Well, law enforcement looks at the community and all of
6   this cocaine coming up on the streets and all this violence
7   that it seems to create.  How do you stop it?  Well, they
8   made choices in how to stop it, and the choices that they
9   make are to make deals with some pretty nasty characters.
10  And when they make those arrangements from where you sit
11  today it looks like they gave away too much.  And your
12  counsel is concerned about that.  I'm concerned about that.
13  The nature of this conspiracy is so successful, so much
14  cocaine, and the violence in the community from this is so
15  great; unsolved murders, some even solved.
16       And so it is necessary, it seems to me, to make those
17  kinds of decisions that you wouldn't want to make in every
18  case, but when a conspiracy is operated so skillfully and so
19  carefully and based on so much intimidation of others and a
20  sense of family and loyalty that has come out of all this,
21  there is a necessity to make deals.  And when we do that we
22  look at the testimony of those people closely.  The jury
23  looked at it closely, I have looked at it closely, and as a
24  result I can't find that there is such a disparity in this
25  case as to cause a departure.

1   It is a harsh sentence. I know it is a harsh sentence,
2   and it is a sentence that is a reflection of congressional
3   concerns and executive concerns for what to do with the
4   cocaine problem in our community. When you make the choices,
5   Mr. Boddie, that you have made and you involve yourself in as
6   much of this as you have, the consequence is a life sentence.
7   So, pursuant to the Sentencing Reform Act of 1984, it is
8   my judgment that you be committed to the custody of the
9   Bureau of Prisons to be imprisoned for a term of life on
10  Count 1 and a term of 240 months on Counts 7, 8, 12, 18, and
11  21 to be served concurrently.
12  I considered a fine in this case. I don't think a fine
13  of any magnitude is appropriate. I don't find that you have
14  got any resources out of which you could pay a fine at this
15  time. I will assess instead a small fine of $5,000, which
16  you can pay through the Inmate Responsibility Program.
17  I'm departing from the Guideline range based on your
18  financial resources and future ability to pay. I find you
19  don't have the ability to pay interest, and I'll waive the
20  interest requirement. And you will notify the probation
21  officer of any material change or circumstance that might
22  affect your ability to pay.
23  And on release from imprisonment you will be placed on
24  supervised release for a term of five years. Within 72 hours
25  of release from the custody of the Bureau of Prisons you will

1   report in person to the probation office in the district to
2   which you are released.
3       While you are on supervised release you will not commit
4   another, federal, state, or local crime. You will refrain
5   from unlawful use of controlled substances, and you will
6   submit to one drug test within 15 days of placement on
7   supervised release and two periodic drug tests as directed
8   thereafter by the probation officer.
9       And you will comply with the standard conditions that
10  have been adopted by this Court, as well as these additional
11  conditions:
12      You will pay any fine you haven't paid and provide the
13  probation officer access to any requested financial
14  information. You will not incur new credit charges or open
15  additional lines of credit without the approval of the
16  probation officer.
17      You will participate in a program of testing for drug
18  abuse and submit to the search of your person, vehicle,
19  office, residence, and property by the probation officer and
20  seizure of contraband found, including illegal drugs and
21  weapons. And you will warn any other residents that the
22  premises may be subject to searches.
23      You do owe a special assessment of $600 by statute. That
24  is due right away. I assume you don't have that?
25          DEFENDANT BODDIE:   No, sir.

1   THE COURT: You can pay that through the Inmate
2   Financial Responsibility Program.
3       And you are remanded now to the custody of the United
4   States Marshal.
5       I neglected to mention something because it is probably
6   fairly obvious. You wish to appeal this, don't you?
7       DEFENDANT BODDIE: Yes, sir.
8       THE COURT: Yes, all right. You have ten days to
9   file that praecipe for appeal. All right?
10      MR. BALDWIN: Yes, sir.
11      THE COURT: Okay.
12          (The Court adjourned at 10:20 A.M.)

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE
MATTER.

_____   3/10/00
GLEN L. CUNNINGHAM                DATE
OFFICIAL COURT REPORTER