UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:98-cr-00038-JMS-MJD |
| | ) | |
| WILLIE BODDIE, | ) -02 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Compassionate Release**

On December 2, 2020, Defendant Willie Boddie—who is represented by retained counsel—filed a motion for compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 177, 178, 182. In the motion, Mr. Boddie asks the Court to reduce his sentence to time served and to immediately release him. Dkt. 178 at 39. The United States responded on December 17, 2020, dkt. 184, and Mr. Boddie filed a reply on January 7, 2021, dkt. 187. At the Court's direction, the United States also filed a notice addressing the availability of the COVID-19 vaccine at Mr. Boddie's correctional facility. Dkt. 198. The motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

**I. Background**

*A.    Conviction and Sentencing*

In 1999, a jury convicted Mr. Boddie of: (1) one count of conspiracy to possess with intent to distribute and to distribute cocaine (Count 1); (2) two counts of conspiracy to commit money laundering (Counts 7 and 8); and (3) three counts of money laundering (Counts 12, 18, and 21).

Dkt. 193 at 5; dkt. 92. Before sentencing, a Presentence Investigation Report ("PSR") was prepared. Dkt. 193. The PSR describes Mr. Boddie's offense conduct as follows:

Mr. Boddie's co-defendant Anthony Spradley was the organizer and leader of the drug and money laundering conspiracies charged in this case. *Id.* at 5. Mr. Boddie began working with Mr. Spradley in the distribution of cocaine as early as 1990. *Id.* He was a manager or supervisor of Mr. Spradley's drug-trafficking organization. *Id.* at 12. During the course of the charged conspiracy, Mr. Boddie acted as the primary distributor of the cocaine Mr. Spradley received. *Id.* at 5. Mr. Boddie also cooked four to five kilograms of crack cocaine at a time and laundered the proceeds of drug sales. *Id.* At a number of times during the conspiracy, law enforcement officers found Mr. Boddie and some of his co-defendants with loaded weapons on their persons and/or in their vehicles. *Id.* Mr. Boddie and some of his co-defendants had loaded weapons at their homes and/or other residences with which they were associated. *Id.* A number of co-conspirators testified that Mr. Boddie routinely carried firearms. *Id.* Trial testimony tied Mr. Boddie to at least 500 kilograms of cocaine. *Id.* at 12. Trial testimony also attributed at least $10 million of the money laundering conspiracy to Mr. Boddie. *Id.* During the course of the conspiracy, Mr. Boddie's co-defendants shot and killed a man who had been a government informant. *Id.* at 9–10, 13. Mr. Boddie was present when discussions about murdering the informant took place, both before and after the murder occurred. *Id.* at 13. He did not, however, directly take place in the murder and, unlike some of his co-defendants, was not charged with witness tampering in connection with the informant's murder. *See* dkt. 94.

Mr. Boddie's conviction in this case represented his first felony conviction. Dkt. 193 at 18–19. Before this case, his only adult conviction was a conviction for driving with a suspended license in 1989. *Id.* at 19. As a result, he was assigned a criminal history category of I. *Id.* at 21. Count 1

carried a minimum sentence of 10 years and a maximum sentence of life imprisonment. *Id.* The remaining counts carried maximum sentences of 20 years per count. *Id.* Although Mr. Boddie had been assigned a criminal history category of I, the weight of drugs attributed to him, among other factors, meant that his guideline range for imprisonment was life. *Id.* Mr. Boddie was sentenced before the U.S. Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). Thus, the guideline range was binding. As a result, in December 1999, the Court sentenced Mr. Boddie to life imprisonment for Count 1 and concurrent 240-month sentences for the other counts. Dkt. 92. The Court also imposed a five-year term of supervised release. *Id.*

B. *Current Incarceration and Medical Conditions*

Mr. Boddie is now 50 years old. He has been in custody for more than 22 years. *See* dkt. 193 at 1. Assuming good-conduct time of 15%, that 22 years of incarceration translates to Mr. Boddie having completed a nearly 26-year term of imprisonment.

Mr. Boddie has complied with the terms of his imprisonment and utilized opportunities for self-improvement within the BOP. During his 22 years of incarceration, he has received only three disciplinary write-ups, with the last write-up coming in 2009. Dkt. 184-1. During his incarceration, Mr. Boddie has earned his GED and completed numerous classes. Dkts. 182-2, 182-3. He has maintained employment, including working as a unit orderly. *Id.* The BOP has apparently classified Mr. Boddie as a medium security risk for reasons not disclosed by the record. Dkt. 184-3. As of July 2020, the BOP considers Mr. Boddie to present a minimal risk of recidivism. *Id.*

Upon his release, Mr. Boddie plans to live with his fiancée in Woodland Hills, California. Dkt. 178 at 3; dkt. 190-1; dkt. 190-3. He has found potential employment. Dkt. 182-6. Upon his release, Mr. Boddie hopes to support his fiancée, who has multiple sclerosis, and his adult son, who is disabled. Dkt. 178; dkt. 190-1; dkt. 190-2; dkt. 190-3; dkt. 190-4. Mr. Boddie has submitted

multiple letters of support, including letters from the mother of his child, his fiancée, his children, and other family members. *See* dkts. 190-2 through 190-19.

The United States concedes that Mr. Boddie is obese, with a Body Mass Index ("BMI") of at least 31. *See* dkt. 184 at 7; *see also* dkt. 184-2 at 218, 311.[1] Mr. Boddie also contends, without contradiction from the United States, that he is a former smoker. Dkt. 178 at 25; dkt. 184 at 24; *see also* dkt. 184-2 at 193 (BOP medical record from 2015 suggesting that Mr. Boddie used tobacco products). The CDC (Centers for Disease Control and Prevention) recognizes that both being obese and being a current or former cigarette smoker are conditions that place individuals at increased risk of experiencing severe symptoms if they contract COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 21, 2021). Mr. Boddie has also been diagnosed with asthma and has been prescribed an inhaler to treat that condition. Dkt. 184-2 at 333–34. The CDC has identified moderate-to-severe asthma as a condition that may increase the risk of severe COVID-19 symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 21, 2021).

C.  *Conditions at FCI Yazoo City Medium*

Mr. Boddie is currently incarcerated at FCI Yazoo City Medium in Yazoo City, Mississippi. FCI Yazoo City Medium has experienced a recent outbreak of COVID-19. *See* dkt. 184 at 17 (United States reporting that, as of December 16, 2020, FCI Yazoo City had 145 active

---

[1] In January 2019, Mr. Boddie weighed 216 pounds. Dkt. 184-2 at 311. A BOP medical record from 2016 suggests that Mr. Boddie is only 4 feet, 11 inches tall, *see id.* at 218, which would give him a BMI of 43.6. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Jan. 21, 2021). The PSR, however, gives Mr. Boddie's height as 5 feet, 9 inches, *see* dkt. 193 at 20, and Mr. Boddie contends that is his true height, *see* dkt.178 at 24. Mr. Boddie also contends, without contradiction from the United States, that he currently weighs 210 pounds, a weight that is consistent with the 2019 BOP record. *Id.* At 5 feet, 9 inches, and 210 pounds, Mr. Boddie's BMI is 31.0. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Jan. 21, 2021). As the United States concedes, a BMI of 31 is above the threshold of 30 needed for an obesity diagnosis. Dkt. 184 at 7.

COVID-19 cases, representing 139 inmates and six staff members). As of January 21, 2021, the BOP reports that eight inmates and six staff members at FCI Yazoo City Medium have active cases of COVID-19; it also reports that 143 inmates and ten staff members have recovered from the virus. https://www.bop.gov/coronavirus/ (last visited Jan. 21, 2021).

The BOP has begun distributing the COVID-19 vaccine in some of its facilities. Dkt. 198. As of January 15, 2021, the vaccine had been delivered to staff and inmates at 68 of the BOP's correctional facilities. *Id.* at 3. All of the BOP's facilities are expected to have received their first doses for distribution by mid-February. *Id.* At present, as vaccines are obtained, priority is given to full-time staff members. *Id.* at 3. Any remaining doses are given to inmates, beginning with those deemed at high risk. *Id.*

As of January 15, 2021, the BOP had given at least one dose of the vaccine to more than 8,000 staff members and more than 6,000 inmates. *Id.* at 3–4. Mr. Boddie has not yet, however, been offered the opportunity to receive the vaccine. *Id.* at 2.

## II. Discussion

Mr. Boddie argues that his increased risk of severe illness or death from COVID-19 creates an "extraordinary and compelling reason" justifying his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 178 at 1–2, 12–28. He also contends that his desire to care for his adult son and fiancée are additional extraordinary and compelling reasons warranting a sentence reduction. *Id.* at 29–31. He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 32–40; dkt. 187 at 11–14.

In response, the United States admits that Mr. Boddie is obese and meets the CDC's identified risk factors for severe COVID-19 symptoms, dkt. 184 at 25, but calls the question of

whether he has presented extraordinary and compelling reasons warranting a sentence reduction a "close call," *id.* at 1, apparently because Mr. Boddie is only obese by a "slim margin," *id.* at 25, and is able to live an active, meaningful life in prison despite his health conditions, *id*. The United States also notes that Mr. Boddie quit smoking several years ago and argues that his asthma is not moderate-to-severe. *Id.* at 20–25. In addition, it disputes that Mr. Boddie's family circumstances constitute an extraordinary and compelling reason warranting release. *Id.* at 26–28. Finally, the United States argues that the sentencing factors in § 3553 do not favor release. *Id.* at 28–32.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
>     or

---

[2] The United States concedes that Mr. Boddie has exhausted his administrative remedies as required by § 3582(c)(1)(A). Dkt. 184 at 9.

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his

sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling

reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

A.     *Extraordinary and Compelling Reasons*

Mr. Boddie does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting release in this case. Dkts. 178, 187.[3]

The Court concludes that Mr. Boddie has shown an extraordinary and compelling reason warranting release in this case. Mr. Boddie has at least two conditions (obesity and being a former smoker) that increase his risk of experiencing severe symptoms if he contracts COVID-19. He also suffers from asthma.[4] Moreover, he is incarcerated at an institution that has experienced an outbreak of COVID-19 infections and continues to house currently infected inmates.

While the Court appreciates that the BOP is taking steps to try to stem the spread of the virus at FCI Yazoo City Medium, the nature of prisons means that there is very little that inmates like Mr. Boddie can do to protect themselves once an outbreak begins. And, while the Court acknowledges that the BOP has begun vaccinating inmates, Mr. Boddie has not yet been offered the vaccine, and it is not clear when the vaccine will be made available to him. Thus, the danger is not over for Mr. Boddie. Notably, the United States frequently concedes that having a CDC-

---

[3] The parties agree that Mr. Boddie made an administrative request for relief to his warden, but it appears that the warden never responded or took a position as to whether extraordinary and compelling reasons exist in this case. *See* dkt. 178 at 31–32. As a result, there is no opinion from the BOP to which the Court must give weight.

[4] The Court recognizes that Mr. Boddie's asthma may not be moderate-to-severe. This Court has, however, recognized that obesity combined with even mild asthma constitutes an extraordinary and compelling reason for a sentence reduction. *See United States v. Rivera*, No. 2:13-cr-00016-JMS-CMM-08, dkt. 681 at 5 (S.D. Ind. July 22, 2020).

identified COVID-19 risk factor satisfies the "extraordinary and compelling" prong of § 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Finan*, No. 1:17-cr-87-TWP-MJD-1, dkt. 145 at 13 (S.D. Ind. June 23, 2020) ("Therefore, because [the defendant] has established that he has a CDC-identified COVID-19 risk factor, the government does not contest that he has satisfied the 'extraordinary and compelling reason' prong of section 3582(c)(1)(A)(i)."); *United States v. Elmer,* No. 1:17-cr-113-JRS-TAB, dkt. 247 at 7 (S.D. Ind. June 17, 2020) ("[The defendant's] diabetes, during the COVID-19 pandemic, presents an extraordinary and compelling reason allowing for compassionate release."); *United States v. Sanders*, No. 3:06-cr-23-RLY-WGH-1, dkt. 31 at 6 (S.D. Ind. Oct. 26, 2020) ("The government concedes that the defendant has presented 'extraordinary and compelling circumstances,' in that he has at least one condition that puts him at an increased risk of severe illness from COVID-19. . . . Specifically, he is obese."); *United States v. Bilyou*, No. 2:11-cr-9-JMS-CMM-6, dkt. 905 at 6 (S.D. Ind. Nov. 27, 2020) ("The government concedes that the defendant has presented 'extraordinary and compelling circumstances,' in that he has at least one condition that puts him at increased risk of severe illness from COVID-19."). Accordingly, the Court finds that Mr. Boddie has demonstrated an extraordinary and compelling reason warranting a sentence reduction.

Because the Court has concluded that Mr. Boddie's medical conditions combine with the risks posed by the COVID-19 pandemic to create an extraordinary and compelling reason warranting a sentence reduction, it need not decide whether Mr. Boddie's desire to care for his fiancée and adult son present an additional extraordinary and compelling reason warranting a sentence reduction.

B.   *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.—**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The United States does not contend that Mr. Boddie would be a danger to another person or the community if released, and the Court agrees.

Even so, Mr. Boddie's crime was extremely serious. He was an integral part of a conspiracy that brought huge amounts of cocaine into Indiana and laundered millions of dollars. His co-defendants were violent and murdered a government informant. But Mr. Boddie did not participate

11

directly in the murder, and the United States never charged him with any wrongdoing with respect to that murder. He has no prior felony convictions and only one other minor conviction as an adult. Moreover, Mr. Boddie has now served more than 22 years in the BOP with an almost-perfect discipline record. His last write-up was more than 11 years ago. During his incarceration, he has earned his GED, taken numerous classes, and maintained employment. While the BOP has apparently assigned Mr. Boddie a medium security classification, the record does not disclose the reasons why, and the BOP has also classified Mr. Boddie as a minimum recidivism risk.

The severity of Mr. Boddie's criminal conduct gives the Court some pause. Nonetheless, it concludes that increasing Mr. Boddie's term of supervised release from five years to 10 years will alleviate any threat to the safety of the community. Upon release, Mr. Boddie plans to live with his fiancée, who will provide him with housing and support. Mr. Boddie also represents that he has found post-release employment. In addition, Mr. Boddie hopes to move his disabled adult son to California so that he can assist with his son's care. The support of his family, the prospect of gainful employment, and the responsibility of helping to care for his son should—when coupled with the increased term of supervised release—help Mr. Boddie transition back to being a law-abiding member of the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Boddie does not presently pose a danger to any person or the community if his sentence is reduced to time served and his term of supervised release is increased from five years to 10 years.

C.   *Section 3553(a) Factors*

Finally, the United States argues that the § 3553(a) factors do not favor early release because Mr. Boddie's crimes were extremely serious and releasing Mr. Boddie after only 22 years of a life sentence would not provide just punishment, promote respect for the law, reflect the

seriousness of his offenses, or protect the public from further crimes by the defendant. Dkt. 184 at 29–33. The United States particularly emphasizes that Mr. Boddie was involved in a violent conspiracy and that some of his co-defendants murdered a government informant. *Id.* Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Boddie's conduct in this case was extremely serious. And his co-defendants did, in fact, murder a government informant. But Mr. Boddie did not directly participate in that murder, and—unlike some of his co-defendants—he was not charged with witness tampering. Mr. Boddie has also served more than 22 years in the BOP. As explained above, assuming 15% good-conduct time, this equates to a sentence of almost 26 years, which is a serious sanction. Upon release, Mr. Boddie will also be subject to an increased term of 10 years of

supervised release, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of his conduct. It will also protect the public from future crimes that Mr. Boddie might commit.

Moreover, when considering a motion for sentence reduction under the First Step Act, a court can consider "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020) (considering motions for sentence reduction under § 404 of the First Step Act). Mr. Boddie has maintained an almost-perfect conduct record during his incarceration and has taken steps toward rehabilitating himself, including earning his GED. The Court recognizes that the guidelines called for Mr. Boddie to receive a life sentence. And, it appears that, if he were sentenced today, the guideline range of imprisonment would still be life. Nonetheless, Mr. Boddie was sentenced in the pre-*Booker* era. If he were sentenced today, the life-sentence guideline would not be mandatory. The United States correctly notes that the Court has declined to grant compassionate release in some cases involving life sentences. *See, e.g.*, *United States v. Newman*, No. 1:96-cr-0080-SEB-DKL-01, 2020 WL 6151250, at *3 (S.D. Ind. Oct. 19, 2020); *United States v. Barrios*, No. 3:02-cr-0002-RLY-CMM-05, dkt. 123 (S.D. Ind. Sept. 21, 2020). But those cases are distinguishable because they involved statutorily mandated life sentences, not life sentences that were driven by the guidelines in the pre-*Booker* era.

When combined with the risk Mr. Boddie faces from the COVID-19 pandemic, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Boddie's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate

14

release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, additional imprisonment beyond the more than 22 years Mr. Boddie has already served would be more than what is necessary to provide just punishment for Mr. Boddie's offenses.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Boddie's sentence and his immediate release from imprisonment, that Mr. Boddie does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Boddie's motion for compassionate release, dkt. [177], **ORDERS** that Mr. Boddie's sentence of imprisonment be reduced to **time served as of January 26, 2021,** and further **ORDERS** the BOP to release Mr. Boddie by **4:00 p.m. on January 26, 2021.** No later than **5:00 p.m. on January 22, 2021**, counsel for the United States is **ORDERED** to do the following: (1) transmit the AO248 Order to Mr. Boddie's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

The term of supervised release is **increased from five years to 10 years.** The terms of supervised release imposed in the Judgment of December 14, 1999 (dkt. 92), otherwise remain the same with the addition of the following condition: Mr. Boddie is further ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

**IT IS SO ORDERED.**

Date: 1/22/2021

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel